WILLIAMSON, J.,
This matter involves a dispute over the terms of settlement of an underinsured motorist claim (“UIM”). Jesse Oltmanns (“plaintiff’) filed a praecipe for writ of summons against the defendant, Erie Insurance Exchange (“Erie”) on December 18, 2014 and a writ was issued. On January 20, 2015, plaintiff filed a motion to enforce settlement seeking enforcement of terms of settlement together with filing costs and attorney fees. Plaintiff also filed a praecipe listing the matter for argument court on the same date. This court ultimately issued a Rule to Show Cause returnable for an answer by Erie, and Erie filed a timely answer. The matter was re-listed for argument on April 6, 2015. Both parties submitted briefs and attended oral argument.
BACKGROUND
Plaintiff alleges he was in an automobile accident on July 7, 2011. He obtained a settlement against the responsible parties for the policy limit available of $15,000. Thereafter, plaintiff made a claim against Erie, his own insurer, for UIM benefits. Plaintiff alleges an agreement for settlement was reached on April 9, 2014, between plaintiff’s counsel, and an adjuster for Erie. Plaintiff submitted in support of his claims herein, a copy *227 of an e-mail his counsel sent to the Erie adjuster dated April 9, 2014 at 3:48 p.m., and, a copy of an e-mail from the Erie adjuster to plaintiff’s counsel also dated April 9, 2014, at 3:11 p.m.
The e-mail first sent from Erie to plaintiff’s counsel indicated the parties can settle at $8,500, that a release was attached for the plaintiff to sign, and that payment would be issued promptly following a return of the original signed release. The e-mail response from plaintiff’s counsel sent 37 minutes later to Erie, indicated agreement to the $8,500 settlement and that in lieu of signing a release, the correspondence (e-mail) from plaintiff’s counsel would memorialize the agreement. Plaintiff’s counsel went on to acknowledge in that e-mail that Erie would have no further obligations to plaintiff as a result of the $8,500 offered.[1]
Plaintiff’s motion and brief argue the parties had an agreement to settle for $8,500 and that Erie refuses to pay the amount due. Plaintiff seeks enforcement of that agreement and attorney fees of $2,000 plus filing costs of this action in the amount of $140.
DISCUSSION
Plaintiff argued in his motion and brief that an agreement was reached and basic contract law requires defendant to make payment. Plaintiff cites in his motion cases that support settlement agreements being enforceable by contract law. We agree. However, that does not immediately resolve the issue in this matter. The parties have a genuine issue as to what was agreed to by the parties.
The plaintiff argued in his motion and brief, that the *228 parties agreed to settle for $8,500 on April 9, 2014 and that he knew of no reason why Erie refused to tender the funds as agreed. Erie responded in their answer and brief that the sole reason the funds have not been paid is the plaintiff’s failure or refusal to sign a release. We do not know if there were any other communications between Erie or Erie’s counsel and plaintiff’s counsel, after the April 9, 2014 e-mails regarding settlement, so we cannot say with certainty that plaintiff’s counsel was aware of Erie’s continuing request for a signed release before a check would be issued.[2] However, we find it extremely hard to believe that there was no conversation between the parties about the matter prior to plaintiff filing the instant action in December 2014, and therefore, plaintiff should have been aware of why the funds had not been sent. That reason was that Erie first wanted a signed release from the plaintiff. Simple rules of professionalism would dictate a telephone call or exchange of correspondence to try and resolve the matter before filing suit.
We question the communications, in part because this matter may have been resolved sooner, and in part because of what has been represented to the court. The plaintiff has indicated in filings that he had no idea why the settlement proceeds were not paid by Erie. However, in the plaintiff’s own filings, he has attached the April 9, 2014 e-mail of Erie, that was sent to plaintiff’s counsel, indicating the matter could be settled for $8,500, and that the money would be paid after the plaintiff signed and returned a release. It seems clear what Erie expected. But plaintiff represented in his brief, “plaintiff is not aware of any reason why defendants now claim that they will not pay the settlement, other than they do not wish to honor *229 the agreement they entered into.” We fail to see how plaintiff did not know Erie expected a signed release. If plaintiff really did not know, it would have been prudent to inquire with Erie, at some point in that eight (8) month time period before he filed this action, in an effort to resolve the matter.
At oral argument, plaintiff’s counsel conceded he now knows Erie wants a signed release before the funds will be released. This is the same request Erie made in their e-mail sent to plaintiff’s counsel on April 9, 2014. Therefore, we will review whether or not a contract for settlement exists between the parties based upon the stipulated facts supplied to this court in the pleadings.
Plaintiff and Erie both admit to the e-mail exchange of April 9,2014 and the e-mails attached to plaintiff’s motion to enforce settlement as Exhibits “A” and “B.” Erie sent the first e-mail at 3:11 p.m. indicating $8,500 would settle the case and that the funds would be sent after the plaintiff signed and returned a release to Erie. Plaintiff’s counsel confirmed agreement to $8,500 in his e-mail to Erie sent 37 minutes later. However, plaintiff’s counsel did not agree to plaintiff signing a release, and instead included language in his e-mail that he indicated was in lieu of a signed release from the plaintiff. Under basic contract law, the e-mails as presented indicate Erie made an offer; and, plaintiff, through counsel, counter-offered by indicating the amount was acceptable, but proposing that language in the e-mail suffice instead of a signed release. There is no indication that Erie accepted this counter-offer. Therefore, there was no meeting of the minds, and no agreement under basic contract law for the settlement plaintiff seeks to enforce.
Plaintiff argued at oral argument that no release is required in this UIM claim, and therefore, the agreement as *230 to the $8,500 settlement should stand. Plaintiff stated that the insurance contract between plaintiff and Erie is silent as to any requirement for a signed release when a UIM claim is settled, and therefore, Erie’s requirement of a signed release is unenforceable. Plaintiff did not provide any case law in support of this proposition either at argument or in his brief. Plaintiff did not provide a copy of the insurance policy between plaintiff and Erie, so it is unknown what the policy states. However, we are unaware of any case law that disallows a UIM carrier from requiring a signed release of its insured as a term of settlement, just because the underlying policy is silent on the issue.
Furthermore, we find the cases cited by Erie out of the Eastern District of Pennsylvania, although not binding, to be persuasive. As the court stated in Leab v. Cincinnati Ins. Co., 1997 U.S. Dist. LEXIS 8868 (E.D. Pa. 1997), “[sjigning a release is (was) the only means by which to put an end to the UIM coverage dispute.” Id. at **23-24. A release confirms the parties’ agreement; it confirms the client is fully aware and agreeable; it assures the UIM carrier the matter is over; and it prevents any further claims, which is the goal of any settlement. If the parties cannot agree on a signed release as a condition to settlement, they can proceed to trial. For these reasons, we find that nothing prevents Erie from requesting a signed release as part of the terms of settlement. As the plaintiff failed to do so, and failed to agree to do so, there can be no agreement to settle.
We also note the following of interest to this matter. Erie attached to their answer, a copy of the release the plaintiff signed to receive the $15,000 policy limits of the tortfeasor’s insurance policy to settle that claim. (Exh. “A”). It is no different, from a policy perspective or from a purely legal perspective, that a UIM carrier would also *231 want a signed release. Erie also attached a copy of the release they sent to plaintiff’s counsel for the plaintiff to sign. (Exh. “B”). We note the release only seeks to release Erie, and only for this incident. There appears to be no reason not to sign the release, and none was given, but for the request of the plaintiff’s counsel. That request evidences a failure of a meeting of the minds, and of an enforceable contract in this case.
Finally, we take note of the fact that a lot of time has been lost in this matter. The plaintiff, who is the true party in this proceeding, has been without settlement funds he could have received one year ago. There was no evidence the plaintiff refused to sign the release. The plaintiff may not understand the significance of the requested release one way or another to him. We are left to wonder if the plaintiff was even aware of his option to sign a release or not sign a release in order to have obtained his settlement funds sooner. It may be that plaintiff’s counsel believes no signed release should be necessaiy in a UIM case. It may be that the actions taken by plaintiff’s counsel are in furtherance of zealous advocacy on the part of clients. It may be that plaintiff’s counsel’s language in the e-mail was simply an attempt to effect the same result as a signed release, but in a quicker manner. In the end, it is the client who suffers the delay of a potential settlement in this matter.
We find that the parties did not reach an agreement as to the terms of settlement as Erie conditioned payment on receipt of a signed release. Plaintiff, through counsel, did not agree to execution of that release. There is nothing to support the contention that a request for a signed release as a term of settlement in a UIM case is improper. Therefore, the motion to enforce settlement will be denied. Hopefully, the parties can still resolve this matter by a settlement in the near future.
*232 ORDER
And now, this 10th day of April, 2015, the plaintiff’s motion to enforce settlement is denied.

. We acknowledge this language paraphrases the e-mails, but covers the important facts.

. This was the reason cited in Erie’s answer to the motion to enforce settlement, their brief, and at oral argument.